**FRATT v. ROBINSON et al.**

No. 13111.

United States Court of Appeals
Ninth Circuit.
April 7, 1953.

Rehearing Denied May 14, 1953.

628

Boldt and George H. Boldt, Tacoma, Wash., for appellant.

Louis Loss, Associate Gen. Counsel, and Alexander Cohen, Special Counsel, Securities and Exchange Commission, Washington, D. C., for S. E. C., amicus curiae.

O. D. Anderson and J. P. Hunter, Everett, Wash., for all appellees except W. E. Difford.

Alfred J. Schweppe and M. A. Marquis, Seattle, Wash., for appellee, W. E. Difford.

Before MATHEWS, STEPHENS, and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

It is alleged in the complaint which was filed in the United States District Court, that the defendants-appellees acquired corporate stock from the plaintiff-appellant through fraudulent representations by the use of the United States mails, the telephone, and other means and instrumentalities of interstate commerce; thus violating Securities Exchange Commission's Rule X–10B–5 which implements § 10 of the Securities Exchange Act of 1934, 48 Stat. 881, 891, 15 U.S.C.A. § 78j. Of specific application here is § 10(b), subdivision (b) of § 78j, 15 U.S.C.A. Hereinafter we shall refer to the implemented section of the Act as § 10. The stock was not handled on or through any securities exchange, or any stock-dealing organization, nor by any person connected with any business sometimes referred to as "over-the-counter markets" or businesses. The stock was not listed with or upon or put for sale with any stock or security-exchange or sales business.

The defendants made motions to dismiss the action upon several grounds,[1] and the court granted the motion to dismiss specifically upon the one ground only, to-wit, that § 10 of the Act does not embrace transactions in stock which have no relation to security exchanges or over-the-counter houses or businesses.[2] The court denied the other motions to dismiss which were based upon the claims: that the allegations as to

Scarborough & Harris, Arthur R. Harris, Tacoma, Wash., Metzger, Blair, Gardner &

---

1. The motions to dismiss referred specifically to Rules 3, and 12(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A.

2. Rule 12(b) (1), Federal Rules of Civil Procedure, 28 U.S.C.A.

the use of the United States mails or an instrumentality of interstate commerce were not sufficient;[3] that the act of 1934 does not provide a civil right of action as alleged in the complaint;[4] and that the statute of limitations had run against the action when the complaint was filed.[5] We are concerned in this appeal with the issues raised in the denied motions as well as with the issues in the granted motion. The order dismissing the action also included rulings on motions to strike,[6] and to make more definite and certain,[7] but we are not concerned therewith in this appeal. The plaintiff has appealed to this court.[8]

The court used the following language in its order:

"* * * [T]he same [motion to dismiss] is hereby granted upon the sole ground that the transactions complained of do not involve a security traded in or upon a securities exchange or upon an 'over-the-counter' market and are therefore not within the purview of the Securities Exchange Act of 1934 * * *."

### Are the Alleged Facts Outside the Purview of the Act?

The first issue posed is: Does § 10 embrace stock transactions (in interstate commerce or through the United States mails) in which no phase of a stock exchange or stock handling business is involved?

But we think it will be helpful to first get well in mind the preamble or foreward to the applicable Act, 48 Stat. 881; 15 U.S.C. A. § 78b, entitled "Necessity for regulation". It is in part as follows (we quote the full preamble in the margin):[9]

"For the reasons hereinafter enumerated, transactions in securities as commonly conducted upon securities exchanges and over-the-counter markets are affected with a national public interest which makes it necessary to provide for regulation and control of such transactions and of practices and matters related thereto, * * *."

Section 10(b), 15 U.S.C.A. § 78j (b) is as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

"(a) * * *

"(b) To use or employ, *in connection with* the purchase or sale of any security registered on a national securities exchange *or any security not so registered,* any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or

---

3. The various defendants based their motions to dismiss under either Rule 12(b) (1) or 12(b) (6), Fed.Rules of Civil Procedure, 28 U.S.C.A.

4. Rule 12(b) (1), Federal Rules of Civil Procedure, 28 U.S.C.A.

5. Rule 3, Federal Rules of Civil Procedure, 28 U.S.C.A.

6. Motion based on Rule 12(f), Fed.Rules of Civil Procedure, 28 U.S.C.A.

7. Motion based on Rule 12(e), Federal Rules of Civil Procedure, 28 U.S.C.A.

8. In a like action brought by other shareholders of appellee company, in the United States District Court for the Eastern District of Pennsylvania, alleging facts similar to those alleged here, defendant's motion to dismiss the complaint was denied. Robinson v. Difford, 1950,

9. § 78b, [preamble], 15 U.S.C.A.: "For the reasons hereinafter enumerated, transactions in securities as commonly conducted upon securities exchanges and over-the-counter markets are affected with a national public interest which makes it necessary to provide for regulation and control of such transactions and of practices and matters related thereto, including transactions by officers, directors, and principal security holders, to require appropriate reports, and to impose requirements necessary to make such regulation and control reasonably complete and effective, in order to protect interstate commerce, the national credit, the Federal taxing power, to protect and make more effective the national banking system and Federal Reserve System, and to insure the maintenance of fair and honest markets in such transactions: * * *."

for the protection of investors." [Emphasis ours.]

The implementing Rule X–10B–5 is as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.

■ Thus it is seen that if § 10 stood alone, its provisions together with the implementing rule would be applicable to "any person" and would not be limited to persons having to do with transactions in securities through organized or established "stock exchanges" or "over-the-counter markets" But the section does not stand alone; instead it stands as a part of a single legislative Act designed to be administered as a whole in the abolition of extensive inimical practices. And its scope should be construed in the interests of such purpose.

The parties to the instant litigation do not agree as to the manner in which the section is intended to aid in the grand purpose. Appellees, in observing the expression "over-the-counter markets", conclude that the expression alludes to established businesses or brokers who handle security transfers off the regular stock exchanges, not including the transfer of securities made without the aid of any such intermediaries. They argue, from such premise, that to come under the Act at all a stock transaction must be through one or another of the established businesses. Therefore, they conclude, the deal in suit is outside the Act and the questioned section of the Act does not touch it.

Appellant and the Commission, as Amicus Curiae, advance the theory that "over-the-counter" embraces every security not traded through a regular stock exchange. Therefore, since in the preamble both expressions "stock exchange" and "over-the-counter markets" are used, the two expressions embrace every security transaction. And, if the mails or an instrumentality of interstate commerce has been connected with it, the section covers it, and, *a fortiori*, the instant alleged deal.

The application of § 10 has been treated by several courts, and in each case until the instant one the section has been held to cover transactions entirely outside any established securities-transfer business, when the mail or any instrumentality of interstate commerce has been used.[10] Thus, each case, save the instant one, rejects the conclusion of appellees but not always their reasoning, and embraces the conclusion of appellant but not always her or the Commission's reasoning.

By what may seem to be a paradox we agree with the conclusion reached by appellant and the Commission while, in general, disagreeing with their premise; and we disagree with the conclusions reached by appellees while, in general, agreeing with their assigned premise.

■■ We think the whole tenor of the Act indicates that its operative procedure is by regulation of security-transfer businesses and persons who function in or through them. That "stock exchange" and "over-the-counter markets" mean, in the Act, any security-transfer business where-

10. Kardon v. National Gypsum Co., D.C. E.D.Pa., 1946, 69 F.Supp. 512; Kardon v. National Gypsum Co., D.C.E.D.Pa., 1947, 73 F.Supp. 798; Robinson v. Difford, D.C.E.D.Pa., 1950, 92 F.Supp. 145; Speed v. Transamerica Corp., D.C., D. Del., 1951, 99 F.Supp. 808. See also Birnbaum v. Newport Steel Corp., 2 Cir., 1952, 193 F.2d 461, 463. "The Prospects for Rule X–10B–5: An Emerging Remedy for Defrauded Investors", 59 Yale L.J. 1120, 1140, note 95.

in the business of marketing securities is conducted. We think the authors of the Act realized that the remedy of the abuses sought to be applied by the Act would be more or less completely effective in the proportion of security-trading done on or through the established businesses. To this end § 10 was enacted in order that those who desire to promote crooked deals would see little advantage in using devious methods to by-pass the security-dealing business houses under regulation. And, further, that prospective crooked deals would be under a powerful deterrent by reason of the fact that perpetrators of fraud in security exchanges would be in violation of federal laws and, as we shall see in our discussion under the next point to be considered herein, would be answerable in damages in federal courts to those they have injured.

We are in substantial agreement with Judge Clark's dissenting opinion in the case of Baird v. Franklin, 2 Cir., 1944, 141 F.2d 238, 244, certiorari denied 1944, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591, as to which we shall have more to say presently, wherein he construed § 6(b) of the same Act upon the point under consideration as we construe § 10 and, as we see it, such construction conforms to the intent of Congress as expressed in the Act's preamble, that is, to make the control of security transactions "reasonably complete and effective." Without going into the details of the legislative history, and we have made some examination thereof, we believe our construction is in harmony therewith. We will not lengthen this opinion with extracts from or specific citation of the applicable legislative history. Very full citation and quotations may be found in Appendix A and Appendix B of the Commission's brief and in the body of appellees' brief.

■ The decisions on the point, save the one in the case we are now reviewing, are in accord with our conclusion, but the reasoning of the several courts varies. Some of the courts take the straight road, that no matter about the rest of the Act, the wording of the section is too plain to admit of extraneous matter in explanation of its meaning.[11] Some say, as does the Commission, that over-the-counter security transfers include all security transactions not made through "stock exchanges" and therefore all transfers covered by § 10 are included in the preamble and sections of the Act following it.[12] The terms "stop-gap", "plugging a loop-hole" and "catch-all" have been applied to § 10. Each expression has been used in argument to support the theory that the questioned section was placed in the Act to more perfectly effectuate the primary purposes of the Act. There appears to be logic in all of these roads to the common destination. There is one phase common to the reasoning of all the cases : § 10 is in aid of the end sought by the Act, to-wit, the lessening of fraudulent and sharp practices in the securities market. We hold that the district court erred in holding that the facts as alleged in the complaint are outside the purview of the Act, and that it was error to dismiss the action.

Has the District Court Jurisdiction of a Private Civil Cause of Action for Damages Under Section 10(b) of the Act?

■ One of the grounds upon which the motions to dismiss were based, was that there is no provision in the Securities Exchange Act of 1934 for a civil cause of action for damages in the United States District Court under § 10. That there is no such express provision is admitted. While the district court specifically denied the motion to dismiss on this ground, appellees here claim that the dismissal should be affirmed for lack of jurisdiction, and the point was briefed and orally argued by the parties.

It is argued by appellees that Congress intended to confine any enforcement of

11. Robinson v. Difford, D.C.E.D.Pa., 1950, 92 F.Supp. 145, 148; Kardon v. National Gypsum Co., D.C.E.D.Pa., 1947, 73 F.Supp. 798, 800. See also Speed v. Transamerica Corp., D.C.D.Del., 1951, 99 F.Supp. 808, 831.

12. Speed v. Transamerica Corp., D.C.D. Del., 1951, 99 F.Supp. 808, 830.

benefits secured to private parties by the section, to action by the Securities and Exchange Commission by way of injunction or criminal prosecution. It is true that there are several sections of the Securities Exchange Act specifically making a civil cause of action available,[13] and it is argued by application of the rule *"expressio unius est exclusio alterius"* that no civil remedy exists where not expressly provided for.[14]

However, the weight of authority and the best reasoning, as we see it, bring us to the conclusion that a civil cause of action may be brought to enforce § 10 as implemented by Securities Exchange Commission Regulation X–10B–5, C.F.R. Section 240.10b–5.[15] As heretofore mentioned, the second circuit had a similar point before it in Baird v. Franklin, 2 Cir., 1944, 141 F. 2d 238, and the point was discussed in an opinion written by Judge Clark which is termed a dissent. In the majority opinion the court assumed the jurisdictional power of the district court to entertain the action, but reversed the judgment on the merits. Judge Clark dissents as to the majority view of the facts, but since the majority did not treat the jurisdictional question at length, he proceeded to do so. The case rests on § 6(b) of the Act as to which there is no specific right of action granted to private individuals. He reasons, not incon-

sistently with our reasoning although not perfectly parallel with it, that Congress intended to make the control of securities transactions "reasonably complete and effective" as that phrase is used in the preamble of the Act.[16] We can think of nothing that would tend more toward discouraging trading off the established business markets and out of governmental regulation or that would more certainly tend to deter fraudulent practices in security transactions and thus make the Act more "reasonably complete and effective" than the right of defrauded sellers or buyers of securities to seek redress in damages in federal courts. Judge Clark disposes of the applicability of the *expressio unius est exclusio alterius* rule, (and we are in agreement with him,) by pointing out that the sections which contain specific rights of actions are " * * * sections [which] deal with special matters only indirectly germane to the regulation of securities exchanges; they provide for more unrestricted recovery than would be possible at common law; and they prescribe narrow statutes of limitation." 141 F.2d 238, 245.

In Bell v. Hood, 1946, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939, a case brought by private parties against Federal Bureau of Investigation officers for tort, there was claimed the right to bring the action for re-

---

13. Sections 9(e), 16(b), and 18(a), 15 U.S.C.A. §§ 78i(e), 78p(b), 78r(a).

14. See "Securities Exchange Commission Action Against Fraudulent Purchasers of Securities", 59 Harvard Law Rev. 769, 779.

15. Kardon v. National Gypsum Co., D.C. E.D.Pa., 1946, 69 F.Supp. 512; Speed v. Transamerica Corp., D.C.D.Del., 1947, 71 F.Supp. 457, 458; Robinson v. Difford, D.C.E.D.Pa., 1950, 92 F.Supp. 145, 149; Slavin v. Germantown Fire Ins. Co., 3 Cir., 1949, 174 F.2d 799, 805; Fischman v. Raytheon Mfg. Co., 2 Cir., 1951, 188 F.2d 783, 787; "The Prospects for Rule X–10B–5: An Emerging Remedy for Defrauded Investors", 59 Yale L.J. 1120, 1133; "Implied Liability Under the Securities Exchange Act", 61 Harv.L.R. 858.

16. "One of the primary purposes of Congress in enacting the Securities Exchange Act of 1934 was to protect the general investing public. Section 2, 15 U.S.C.A. § 78b, states that 'transactions in securities as commonly conducted upon securities exchanges and over-the-counter markets are affected with a national public interest', while § 6(d) specifically prescribes for the protection of investors. Some thirty-five other sections of the Act include similar references to this ideal [citing them]. Section 2 also states that another goal of the statute is to make the control of securities transactions 'reasonably complete and effective'. If these aims are to be followed by the Act, then, if the investing public is to be completely and effectively protected, § 6(b) must be construed as granting to injured investors individual causes of action to enforce the statutory duties imposed upon the exchanges. * * *." Judge Clark, dissenting in Baird v. Franklin, 2 Cir., 1944, 141 F.2d 238, 244, 245.

dress of violations made under the Fourth and Fifth Amendments to the United States Constitution. Congress had not enacted a statute providing for such action. However, Congress had authorized, by 28 U.S. C.A. § 41 (1),[17] federal district courts to try "suits of a civil nature" where the matter in controversy arises under the "Constitution or laws of the United States * * *." The point under attack was the jurisdiction of the district court. It was held that the district court had jurisdiction to adjudicate the scope of the Fourth and Fifth Amendments, and left the point to be decided by the district court. We quote in the margin from the opinion.[18] It is not unusual for courts to take jurisdiction of civil remedies where the legislature has spoken only of criminal sanctions.[19]

## Are the Allegations of the Complaint Sufficient as to the use of the Mails or use of an Instrumentality of Interstate Commerce in Connection With the Transaction?

■ Another reason given by appellees in their motions to dismiss the instant action is that the allegations in regard to the use of the mails or the use of instrumentalities of interstate commerce are insufficient. Appellees call attention to the fact that there is no specific allegation in the complaint that any fraud or misrepresentation in regard to the stock or its value was made by mail or in the use of an instrumentality of interstate commerce, and rely heavily upon the case of Kemper v. Lohnes, 7 Cir., 1949, 173 F.2d 44, 45. That case relates to § 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77l(2) in which it is provided that any person who "sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements * * * shall be liable * * *." The court applied the statute to the alleged facts which were, in short: A person advertised stock for sale. A would-be buyer answered by mail, which elicited a reply. No misrepresentation is alleged in the mail exchange or in the advertisement or instrumentality of interstate commerce. Subsequently, the advertiser and the person who replied to the adver-

17. 1927 Edition, now 28 U.S.C.A. § 1331.

18. "The issue of law is whether federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments. That question has never been specifically decided by this Court. That the issue thus raised has sufficient merit to warrant exercise of federal jurisdiction for purposes of adjudicating it can be seen from the cases where this Court has sustained the jurisdiction of the district courts in suits brought to recover damages for depriving a citizen of the right to vote in violation of the Constitution. And it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the State to do. Moreover, where federally protected rights have been invaded, *it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that

*where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.* Whether the petitioners are entitled to recover depends upon an interpretation of 28 U.S.C. § 41(1), and on a determination of the scope of the Fourth and Fifth Amendments' protection from unreasonable searches and deprivations of liberty without due process of law. Thus, the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the District Court has jurisdiction. [Cites Cases.]" [Emphasis ours.] Bell v. Hood, 1946, 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939.

19. Bell v. Hood, 1946, 327 U.S. 678, 66 S. Ct. 773, 90 L.Ed. 939. See Lowndes, "Civil Liability Created by Criminal Legislation", 16 Minn.L.Rev. 361; "New Civil Liabilities Under Securities and Exchange Act Rules", 14 U. of Chi.L.Rev. 471.

tisement met and the deal was made through oral misrepresentation by the advertiser. The court held that to be within the section the crooked representations would have to be made in one of the instrumentalities named.

Whatever may be said as to the soundness of the court's conclusions, certainly the case is not conclusively contrary to our view that in our case the crookedness need not appear at all in the instrumentality used. The applicable statutes are different in the two cases, as will be seen readily upon comparing them. While it may be that the fraudulent acts must appear in the use made of the instrumentality under § 12(2) of the Securities Act of 1933, under the Securities Exchange Act of 1934 the use need only be "in connection with" the fraud. The unlawful conduct is:

> "To use or employ [directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—], *in connection with* the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." [Emphasis ours.] 15 U.S. C.A. § 78j(b), 48 Stat. 891.

The use of the mails and of interstate commerce in the instant case are alleged as follows: Paragraph V of the complaint consists of general allegations of a fraudulent nature "by the use of the mails, telephone, telegraph and other means and instruments of transportation in interstate commerce * * *." Paragraph XV of the complaint is as follows: "That thereafter and pursuant to the said fraudulent plan and conspiracy, defendant, John R. Robinson, on his own behalf and as agent for the Control Group, by the use of the United States Mails, authorized and directed the First National Bank of Everett, Washington, to write to the National Bank of Commerce, in Seattle, Washington, instructing the latter bank to deduct Forty-Nine Thousand ($49,000) Dollars from the account of the former bank, and to transmit and/or credit the same to the plaintiff's account, and further instructed said bank to forward the plaintiff's stock, then held by it in escrow pursuant to said option, to the First National Bank of Everett for delivery by it to John R. Robinson."

The district court, it would seem, held the general allegations sufficient as it denied a motion to strike them. These general allegations may or may not be supported by evidence showing fraud was actually used or employed *in connection with* the use of instruments of interstate commerce or the United States mails. We hold the allegations sufficient.[20]

### Had the Statute of Limitations Run When the Action Was Begun?

■ Both parties agree that the statute of limitations of the State of Washington, wherein the alleged unlawful acts occured, applies, since the Act provides none. Rem. Rev.Stat. § 159(4) Wash. provides:

> "Within three years:
>
> \* \* \* \* \* \*
>
> "4. An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

---

20. See the following which we believe have the best reasoning in support:

Schillner v. H. Vaughan Clarke & Co., 2 Cir., 1943, 134 F.2d 875; Moore v. Gorman, D.C.S.D.N.Y., 1948, 75 F.Supp. 453.

See contra: Kemper v. Lohnes, 7 Cir., 1949, 173 F.2d 44; Siebenthaler v. Aircraft Access. Corp'n, D.C.S.D.Mo., 1940, CCH Fed.Sec.L.Rep. 90, 112; Independence Shares Corp'n v. Deckert, 3 Cir., 1939, 108 F.2d 51, reversed on other grounds, 1940, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189; Murphy v. Cady, D.C.D. Me., 1939, 30 F.Supp. 466, affirmed, 1 Cir., 1940, 113 F.2d 988, certiorari denied 1940, 311 U.S. 705, 61 S.Ct. 175, 85 L.Ed. 458.

The instant action for relief is "upon the ground of fraud" and if this section is applicable, the action was begun in time. But appellees, contending that the action arises out of a statute, state correctly that the Supreme Court of Washington has held many times [21] that an action to recover on a liability created by statute is subject to Rem.Rev.Stat. § 165, which reads as follows:

"An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

■ In a sense, of course, the instant action is based upon a statute, but it is also based upon fraud which has been the subject of common law concern through the centuries. And, of course, the Washington state law recognizes such an action. The authors of 53 C.J.S., Limitations of Actions § 83(a), at page 1052, have deduced the following from the authorities:

\* \* \* \* \* \*

"The phrase 'liability created by statute' or 'liability created by law', within the meaning of such a statute, has been held not to include or extend to actions arising under the common law, \* \* \*."

■ Appellees argue that the basis of the federal statute is the use of the mails or other instrumentality of interstate commerce, therefore the action arises from a statute and the two-year limitation applies. But, of course, the use of the mails *per se* is not denounced, it is the fraud that offends. For that reason, it denies the use of the mails in connection with the fraud.

Here is not a governmental statutory denouncement of a human action heretofore undenounced, such as a violation of a wartime price for a commodity. Fraud is denounced in all its phases by federal and state and the common law. There are statutes with restrictions and limitations as to actions under it, but such actions do not arise out of nor upon a statute, within the meaning of the Washington state law. To hold otherwise would be paying tribute to form inconsistent with the spirit and substance of the rule.

What we have said appears to be borne out by the Washington State Supreme Court in the case of Union Trust Co. v. Amery, 1912, 67 Wash. 1, 120 P. 539, 540. That action was based upon a Washington statute which declared unlawful, among other acts, the making of any division of the stock of a corporation except from profits. It was claimed by defendants that the statute of limitations had run. The court thought otherwise, and held the applicable limitation was that provided for actions based upon fraud.

Also, in Oregon-Washington R. & Nav. Co. v. Seattle Grain Co., 1919, 106 Wash. 1, 178 P. 648, 650, 185 P. 583, it was held that "A liability created by statute is one in which no element of agreement enters." The action was for the recovery of money for carrying freight, and the court said the element of agreement was present because of the agreement between the shipper and the transporter.

The element of agreement in our case is the agreement to purchase and sell the stock.

Reversed.

21. Thomas v. Richter, 1915, 88 Wash. 451, 153 P. 333; Douglas County v. Grant County, 1917, 98 Wash. 355, 167 P. 928; Heitfeld v. Benevolent and Protective Order of Keglers, 1950, 36 Wash.2d 685, 220 P.2d 655, 18 A.L.R.2d 983.