Jack D. MATHESON, Appellant,

v.

George ARMBRUST, Appellee.

No. 16750.

United States Court of Appeals
Ninth Circuit.

Nov. 28, 1960.

Reinhardt, Coblens & Stoll, Justin N. Reinhardt, Morris J. Galen, Portland, Or., for appellant.

William F. White, White, Sutherland & White, Portland, Or., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and BOWEN, District Judge.

HAMLEY, Circuit Judge.

George Armbrust, purchaser of one hundred shares of the capital stock of Willamette Hauling Company, brought this action to cancel the contract of sale as void and to recover damages. Named as defendants in addition to the company were Jack D. Matheson, who sold the stock to Armbrust, and other persons since dismissed from the action. After a nonjury trial judgment was entered for plaintiff, the monetary award being in the sum of $30,000. Appealing to this court, Matheson contends that the district court was without jurisdiction over the subject matter or the person, and that appellee failed to state or prove a claim upon which relief may be granted.

The relevant facts as found by the trial court and not disputed here may be briefly stated. Matheson, a resident of the State of Oregon, was the owner of all of the outstanding corporate stock of Willamette Hauling Company, consisting of one hundred shares. He was also the president and general manager of the corporation. In April 1954 Armbrust, also a resident of the State of Oregon, inquired of Matheson at Portland, Oregon, as to the possibility of purchasing this

stock. Negotiations were undertaken but were broken off.

Thereafter, on May 6, 1954, Matheson at Portland, Oregon, telephoned to Armbrust in Pasco, Washington. During this conversation Matheson stated that he would make Armbrust a better price and furnish more complete financial data than during the original negotiations if Armbrust would return to Portland and resume negotiations. Armbrust returned to Portland following this telephone call and resumed negotiations which led to the sale of the securities to Armbrust on May 22, 1954.

In connection with this transaction Matheson intentionally undertook and practiced a scheme to defraud Armbrust. This scheme involved, among other things, the making of gross misstatements concerning the financial condition and earnings of the company. Armbrust relied upon these representations and was deceived thereby, as a result of which he was damaged in the sum of $30,000.

It was alleged in the complaint that the described conduct on the part of Matheson constituted a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) [1] and rule X–10B–5 of the Rules and Regulations of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5.[2] District court jurisdiction was therefore asserted and exercised under section 27 of the act, as amended, 15 U.S.C.A. § 78aa. This section provides, among other things, that the district courts shall have exclusive jurisdiction of all suits in equity and actions at law "brought to enforce any liability or duty created by this title or the rules and regulations thereunder. * * * "[3]

Appellant's contention that the district court lacked jurisdiction over the subject matter of the action is predicated in part upon the introductory language of section

1. Section 10(b) of the act provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
* * * * *
"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. Section 240.10b–5 provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
"(a) To employ any device, scheme, or artifice to defraud,
"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security."

3. Reference was also made in the complaint to section 29(b) of the act, 15 U.S.C.A. § 78cc(b), which provides:
"(b) Every contract made in violation of any provision of this title or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this title or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule or regulation."

10. As indicated by this language, the use or employment of a manipulative or deceptive device or contrivance of the kind referred to in section 10(b) and rule X–10B–5 is not violative of the act unless there has been a direct or indirect use of some means or instrumentality of interstate commerce or of the mails or of a facility of a national securities exchange. The only such means, instrumentality or facility which appellant was found to have used in this case was the interstate telephone line between Portland, Oregon, and Pasco, Washington.

Appellant argues that the court did not find that this instrumentality was used in perpetrating the fraud. What the court found, according to appellant, is that the fraudulent scheme was practiced upon Armbrust after the latter returned to Portland, so that the fraud all took place in Portland without the use of any instrumentality of interstate commerce. In presenting this argument appellant relies upon that part of the findings of fact quoted in the margin.[4]

All that is required to establish a violation of section 10 is a showing that a means, instrumentality or facility of a kind described in the introductory language of that section was used, and that in connection with that use an act of a kind described in section 10(a) or (b) occurred. Errion v. Connell, 9 Cir., 236 F.2d 447, 455.

The finding of fact upon which appellant relies is somewhat ambiguous, since it recites that the use of the long-distance telephone constituted a direct use of an instrumentality of interstate commerce "in" the fraudulent scheme "thereafter" practiced upon Armbrust. But this ambiguity is completely resolved by the court's further finding that "commencing with the said long-distance telephone call by Matheson on May 6, 1954, and contin-

uing to the culmination of the transaction on or about May 22, 1954, at Portland, Oregon, Matheson intentionally undertook and practiced a scheme to defraud Armbrust. * * *"

As so clarified it must be held that the trial court expressly found that the fraud was practiced in connection with the use of the long-distance telephone between Oregon and Washington. It follows that in so far as the requirements of section 10(b) are concerned, the findings of fact establish jurisdiction in the district court over the subject matter of the action.

Appellant further contends, however, that since the district court found what was in effect common-law fraud, the state courts of Oregon and not the federal courts have subject-matter jurisdiction.

This action is based upon a violation of section 10(b) of the act and rule X–10B–5, and is therefore governed by section 27 of the act. This section expressly confers exclusive jurisdiction on the district courts with respect to all suits in equity and actions at law brought to enforce any liability or duty created by section 10(b) and rule X–10B–5. Section 28(a) of the act, 15 U.S.C.A. § 78bb (a), recites in part that the rights and remedies provided by the act "shall be in addition to any and all other rights and remedies that may exist at law or in equity * * *."

Actions brought to enforce any liability or duty created by section 10(b) and rule X–10B–5 are therefore additional to state and any other federal actions. Appellee, as plaintiff, may have had a choice between suing in state or federal court to recover damages for the fraud which appellant perpetrated, If so, the long-established principle is applicable, that "the party who brings a suit is master to

---

4. " * * * That the use of said long-distance public telephone between Portland, Oregon, and Pasco, Washington, on May 6, 1954, by Matheson on behalf of himself and Willamette Hauling Compa-

ny constituted a direct use of an instrumentality of interstate commerce in the fraudulent scheme thereafter practiced upon Armbrust * * *."

decide what law he will rely upon." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716.

We therefore hold that the fact that appellee may have had an adequate civil remedy in the courts of Oregon did not deprive the district court of jurisdiction over the subject matter of this cause of action.

■ Appellant next contends that section 10(b) of the act is not applicable with regard to "face to face" negotiations outside the organized security market between private individuals as owner and purchaser in an isolated transaction for the sale of the entire capital stock of a corporation. Fratt v. Robinson, 9 Cir., 203 F.2d 627, 37 A.L.R.2d 636, is cited in support of this proposition. Since this was such a transaction, and since there is not diversity of citizenship between appellant and appellee, it is argued that the court lacked jurisdiction over the person of appellant.

Both the Fratt and Errion cases involved "face to face" security transactions independent of any security-dealing business house or security exchange. In both of those cases it was held, directly contrary to appellant's contention, that section 10 and rule X–10B–5 cover security transactions outside the established securities-transfer business. See Fratt, 203 F.2d at 630; Errion, 236 F.2d at 453.

The district court did not lack jurisdiction over appellant in the respect urged.

Finally, appellant urges, section 10(b) and rule X–10B–5 afford no private civil remedy, and appellee has therefore failed to state or prove a claim upon which relief may be granted. Conceding that this court has sanctioned recovery under rule X–10B–5 by the seller of securities, appellant points out that we have never passed upon the question of whether such a remedy is available to a purchaser of securities.

■ Much of appellant's argument under this point is directed to the contention that it was not intended that section 10(b) would afford a private civil remedy to any person. But this contention was rejected in the Fratt and Errion cases, both of which involved plaintiffs who were sellers. The only question remaining is whether Congress intended to draw a distinction between sellers and buyers affording the former a remedy under section 10(b) as in the cases last cited, but not affording a remedy to a buyer.

No such distinction is indicated in section 10(b). Under that section it is unlawful to use or employ the proscribed device or contrivance "in connection with the purchase or sale of any security." Appellant, however, apparently bases his argument for such a distinction on the fact that certain civil remedies are specifically made available to purchasers of securities in certain situations by sections 11 and 12 of the Securities Act of 1933, as amended, 15 U.S.C.A. §§ 77k and 77l. In essence, this is an effort to limit the scope of section 10(b) of the Exchange Act by recourse to the interpretive rule of *expressio unius est exclusio alterius*.

■ This same line of reasoning advanced in an effort to preclude sellers from a civil remedy under section 10(b) was rejected by this court in Fratt v. Robinson, 9 Cir., 203 F.2d 627, 632. In Securities and Exchange Commission v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 350–51, 64 S.Ct. 120, 123, 88 L.Ed. 88, it was noted that however helpful this and other rules of construction may be, the courts will nevertheless "construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."

As before noted, the text of section 10 (b) makes express reference to purchases as well as sales. In promulgating rule

X–10B–5 to implement that section the Commission has provided relief for purchasers as well as sellers. Under these circumstances and in conformity with the view expressed in Joiner, quoted above, we find no room for application of the rule of statutory construction to which reference has been made.

We subscribe to the view expressed in Fischman v. Raytheon Mfg. Co., 2 Cir., 188 F.2d 783, wherein buyers of common stock were afforded a remedy under section 10(b) of the Exchange Act notwithstanding the fact that the basis of their claimed fraud also constituted a violation of section 11 of the Securities Act of 1933. See also Hooper v. Mountain States Securities Corporation, 5 Cir., 282 F.2d 195.

Affirmed.