Harry R. CONOVER, Plaintiff-Appellee,

v.

DEAN WITTER REYNOLDS, INC., and
Brenton Ogden, Defendants-Appellants,

and

Sears, Roebuck & Co., Defendant.

No. 85–6082.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1986.

Decided July 17, 1986.

Gregory L. Dillion, Newport Beach, Cal.,
for plaintiff-appellee.

Eugene Bell, Kevin K. Fitzgerald, Craig
R. Bockman, Jones & Bell, Los Angeles,
Cal., for defendants-appellants.

Before SCHROEDER and NORRIS, Circuit Judges, and SOLOMON,* District Judge.

SCHROEDER, Circuit Judge.

## I. INTRODUCTION

This is an action by a customer against his securities broker for damages resulting from alleged violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission Rules. In this appeal by the broker, the issue is whether the claim should be submitted to arbitration under the arbitration provision of the parties' customer agreement. Relying upon the Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), and subsequent decisions of this circuit, the district court denied the defendants' motion to compel arbitration.

The genesis of this appeal is Justice White's special concurring opinion in *Dean*

* Honorable Gus J. Solomon, Senior United States District Court Judge for the District of Oregon, sitting by designation.

*Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Justice White there questioned whether *Wilko's* holding, i.e. the non-arbitrability of claims arising under the Securities Act of 1933, applies to claims arising under the Securities Exchange Act of 1934. This is the first of a number of similar cases, involving arbitrability of customer claims against a broker under section 10(b) of the 1934 Act and Rule 10b–5, to reach this court since the Supreme Court's decision in *Byrd.*

We affirm the district court's ruling that claims under section 10(b) of the 1934 Act should be litigated in federal court rather than submitted to arbitration. For the reasons discussed below, we conclude that the language and history of the securities statutes, considered against the background of controlling Supreme Court decisions and circuit court decisions stressing the importance of a federal judicial forum for Rule 10b–5 claims, require us to hold that the judicial forum for such claims cannot be waived by an arbitration agreement between a customer and broker.

## II. BACKGROUND

Plaintiff-appellee, Harry Conover, opened a margin account with Dean Witter Reynolds, Inc., in 1960 and signed a form "customer agreement," which contained the following arbitration provision:

16. Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules ... of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange....

In July, 1983, Conover brought this suit against Dean Witter and the broker who handled Conover's account, Brenton Ogden. Conover alleged that the defendants "churned" and manipulated his account to generate sales commissions, in violation of section 10(b) of the Securities Exchange

Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

On May 10, 1985, shortly after the Supreme Court's decision in *Byrd,* Dean Witter filed a motion to compel arbitration of Conover's section 10(b) claim and to stay further proceedings pending completion of that arbitration. The motion stressed Justice White's concurrence in *Byrd,* and urged that arbitration provisions of a customer agreement should constitute a waiver by the customer of a judicial forum for section 10(b) claims.

In discussing the waiver issue, Justice White posed a question which the parties had not raised and which the Court did not need to decide in *Byrd.* Indeed, as Justice White observed, the very "premise of the controversy" in *Byrd* was that the plaintiff's claims in that case under the 1934 Act were not arbitrable, in spite of the arbitration agreement. *Byrd,* 105 S.Ct. at 1244 (White, J., concurring).

This assumption of non-arbitrability of section 10(b) claims is one that this court has shared. It is reflected in several Ninth Circuit Court decisions after the Supreme Court's decision in *Wilko,* and before its opinion last year in *Byrd. See Kehr v. Smith Barney, Harris Upham & Co.,* 736 F.2d 1283, 1285 n.1 (9th Cir.1984); *Kershaw v. Dean Witter Reynolds, Inc.,* 734 F.2d 1327, 1328 (9th Cir.1984); *De Lancie v. Birr, Wilson & Co.,* 648 F.2d 1255, 1257 (9th Cir.1981). Commentators also had assumed that *Wilko* applied to claims arising under Section 10(b) of the 1934 Act. *See, e.g.,* A. Jacobs, *The Impact of Rule 10b–5,* § 237.02 (1980) ("An agreement to arbitrate future claims under the 1933 Act or the 1934 Act ... is voidable"); S. Jaffe, *Broker-Dealers and Securities Markets* § 1702 (1977) (Noting, without discussion, that *Wilko's* holding applies to claims arising under the 1934 Act); A. Bromberg & L. Lowenfels, 2 *Securities Fraud & Commodities Fraud* § 5.16 (410) (1985) (same).

Although this circuit did not directly decide the issue, at least five other circuits in the period before *Byrd* did decide it, and

they held squarely that 1934 claims are not arbitrable. *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1030 (6th Cir.1979); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore,* 590 F.2d 823, 827–29 (10th Cir.1978); *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831, 833–36 (7th Cir.1977); *Allegaert v. Perot,* 548 F.2d 432, 437 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977); *Sawyer v. Raymond, James & Associates, Inc.,* 642 F.2d 791, 792 (5th Cir.1981). *See also Surman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 733 F.2d 59, 61 (8th Cir.1984); *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025–26 (11th Cir.1982); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532, 537 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976).

After the Supreme Court's opinions in *Byrd,* at least one circuit, the Second, has reaffirmed its pre-*Byrd* holding of non-arbitrability, reaching the same conclusion that we reach today. *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94 (2d Cir.1986). The Second Circuit reasoned that clear circuit precedent, the similarity of '33 and '34 Act provisions, and "strong public policy concerns" precluded arbitration of claims under section 10(b).

Because our previous decisions have not addressed the issue squarely, we are free in this case to consider the issue appellants raise. We do so by examining, in light of the questions raised by Justice White, the statutes, their history, and their interpretation by the courts.

## III. DISCUSSION

Dean Witter claims that the Arbitration Act, 9 U.S.C. § 1, *et seq.,* requires arbitration of Conover's claims against it. The Arbitration Act provides that an arbitration agreement in a contract evidencing a transaction involving commerce or in a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

As Dean Witter points out, the Supreme Court repeatedly has enforced arbitration agreements in light of the strong federal policy evidenced in the Arbitration Act. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* — U.S. ——, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985) (because of the international nature of the contract, the arbitration clause was valid in regard to claims that might not be arbitrable under a domestic agreement); *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (a California franchise law which invalidates arbitration agreements violates the supremacy clause); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

■ The Arbitration Act, however, obviously does not automatically validate an arbitration agreement in the face of contrary congressional policy. *See, e.g. Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In *Mitsubishi,* the Supreme Court explained why not all controversies implicating statutory rights are suitable for arbitration.

> Just as it is the congressional policy manifested in the federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by the Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.

*Mitsubishi,* 105 S.Ct. at 3355. Similarly, in *Wilko,* the Supreme Court recognized the tension between the respective policies of the Arbitration Act and the Securities Act of 1933. It considered the statutory language and purposes of the Acts, and concluded that "the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration...." 346 U.S. at 438, 74 S.Ct. at 188.

Thus, the question in this case is whether congressional policy prohibits arbitration of claims arising under section 10(b) of the Securities Exchange Act of 1934, despite the strong federal policy favoring arbitration. To determine Congress' intent, we study the text, and both the legislative and judicial history of the 1934 Act, with due regard for the purposes underlying the securities and arbitration statutes.

In determining congressional intent with respect to waiver of a judicial forum we look first to the language of the securities statutes. In *Wilko*, the Supreme Court found that section 14 of the Securities Act of 1933 was a manifestation of Congress' intent to prohibit waiver of the right to a judicial forum, even under a written arbitration agreement. Section 14 provides:

> Any condition, stipulation or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

15 U.S.C. § 77n. The *Wilko* Court reasoned that an arbitration agreement required a securities purchaser to waive compliance with section 22, which provides for enforcement of section 12(2) in state or federal court. It concluded that under section 14, such an agreement was void.

The Securities Exchange Act of 1934 contains a waiver provision almost identical to section 14 of the 1933 Act. Section 29(a) provides:

> Any condition, stipulation or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

15 U.S.C. § 78cc(a). The 1934 Act restricts enforcement to the federal courts. 15 U.S.C. § 78aa. Thus, to the extent that *Wilko* rests upon the conclusion that an arbitration agreement is an impermissible waiver of enforcement rights arising pursuant to statute or regulations, the similarity of the Acts' waiver provisions suggests that *Wilko's* result also would apply to claims arising under section 10(b) of the 1934 Act and Rule 10b–5.

Hence, several circuits have relied on the similarity between the anti-waiver provisions of the 1934 Act and the 1933 Act in refusing to compel arbitration of section 10(b) claims. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 590 F.2d 823, 827 (10th Cir.1978); *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831, 836 (7th Cir.1977); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 538 F.2d 532, 536 (3d Cir.), *cert. denied*, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). These courts reasoned that if the anti-waiver provision of the 1933 Act, which is almost identical to section 29(a) of the 1934 Act, renders an arbitration agreement between a brokerage firm and a customer void as to a customer's section 12(2) claim, then section 29(a) must have the same effect on a predispute agreement that would have required arbitration of a section 10(b) claim. *Weissbuch*, 558 F.2d at 836; *Ayres*, 538 F.2d at 536.

Despite the analogous waiver provisions in the 1933 Act and the 1934 Act, appellants contend that *Wilko's* reasoning should not be applied to the claim presented in this case, because the 1934 Act lacks an express provision for a private right of action under section 10(b). As Justice White pointed out, the original text of the 1934 Act, standing alone, is not conclusive as to whether a federal judicial forum exists at all for section 10(b) claims, much less as to whether the judicial forum can be waived.

> More important, the cause of action under § 10(b) and Rule 10b–5, involved here, is implied rather than expressed.... Moreover, *Wilko's* solicitude for the federal cause of action ... is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action.

*Byrd*, 105 S.Ct. at 1244 (White, J., concurring).

We therefore look beyond the original text of the Act to its subsequent history in

Congress and the courts. That history tells us, first, that the implied cause of action in federal court under section 10(b) and Rule 10b–5 has become well-established, and its nonwaivable character has become well accepted by the Securities and Exchange Commission, the courts of appeals, and Congress itself. For histories of the origin and growth of section 10(b) actions, *see* 5A A. Jacobs, *Litigation and Practice under Rule 10(b)–5* § 8 (2d ed. 1985); 3 L. Loss, *Securities Regulation,* 1763–64 and nn. 260–63 (2d ed. 1961) and 6 *id.* at 3871–73 (Supp.1969). In 1979, the Securities and Exchange Commission issued a Release warning broker-dealers that customers should be made aware that they have a right to a judicial forum to pursue claims under both the 1933 and 1934 Acts, notwithstanding their arbitration agreements. Sec.Exch. Act Release No. 15984 (July 2, 1979), 17 SEC Docket 1167 (1979), 1979 Fed.Sec.L.Rep. (CCH) ¶ 82,122.

The legislative and judicial history tells us, second, that Congress could have eliminated the federal cause of action for section 10(b) in 1975, when it undertook comprehensive revision of the 1933 and 1934 Acts, had it chosen to do so. Congress' revision, however, left section 10(b) intact.

The history tells us, third, and most important, that in 1975, Congress expressly recognized the non-arbitrable nature of disputes between brokers and customers. In the conference report to the Securities Act Amendment of 1975, Congress emphasized that its amendment to section 28 of the Securities Exchange Act of 1934, which permitted arbitration agreements between brokers and exchanges, did not extend to arbitration agreements between brokers and customers:

> It was the clear understanding of the conferees that this amendment did not change existing law, as articulated in *Wilko v. Swan,* 346 U.S. 427 [74 S.Ct. 182, 98 L.Ed. 168] (1953), concerning the effect of arbitration proceeding provisions in agreements entered into by persons dealing with members and participants of self-regulatory organizations.

H.R.Rep. No. 229, 94th Cong., 1st Sess. 111, *reprinted in* 1975 U.S.Code Cong. & Ad.News 179, 321, 342.

This legislative history is compelling, as two of our sister circuits have recognized in holding that section 10(b) claims are non-arbitrable. In *Ayres v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* the Third Circuit noted this language in the conference report, and concluded, "Congress appears to have accepted the view that *Wilko v. Swan* applies in the 10b–5 context." 538 F.2d at 537; *see also Weissbuch,* 558 F.2d at 836. The Supreme Court has stated in a related context that Congress' decision to leave section 10(b) intact suggests ratification of a judicial remedy under section 10(b). *Herman & MacLean v. Huddleston,* 459 U.S. 375, 384–86, 103 S.Ct. 683, 688–89, 74 L.Ed.2d 548 (1983); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 379, 381–82, 102 S.Ct. 1825, 1839, 1840–41, 72 L.Ed.2d 182 (1982) (finding that Congress' comprehensive amendments to the Commodities Exchange Act was evidence that Congress intended to preserve the implied remedy under the Act).

The policies served by judicial enforcement of section 10(b) and Rule 10b–5 reflect the unsuitability of arbitration for such claims. This can be seen in the many opinions of the Supreme Court and courts of appeals involving section 10(b). The leading opinion in this circuit is *Fratt v. Robinson,* 203 F.2d 627 (9th Cir.1953). We there held that section 10(b) implies a private right of action, primarily because the deterrent effect of private enforcement of section 10(b) is necessary to accomplish both that section's purpose and the 1934 Act's general purpose of establishing "reasonably complete and effective" control over securities transactions. *Id.* at 632. In gauging the potential of section 10(b) actions to deter fraudulent practices, we placed particular emphasis on the fact that violations would be redressable in federal court. *See id.* at 631, 632. We have reaffirmed our holding in *Fratt* in *Ellis v. Carter,* 291 F.2d 270 (9th Cir.1961); *Mathe-*

son v. Armbrust, 284 F.2d 670 (9th Cir. 1960), cert. denied, 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860 (1961); and in *Errion v. Connell*, 236 F.2d 447 (9th Cir.1956). The *Fratt* rationale views the 1933 and 1934 Acts as a comprehensive scheme to regulate securities, see Fratt, 203 F.2d at 631–32; accord *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380, 103 S.Ct. 683, 686, 74 L.Ed.2d 548 (1983).

Other circuits have adopted *Fratt*'s reasoning and have similarly stressed the need for judicial control over securities transactions. See *Jordan Building Corp. v. Doyle, O'Connor & Co.*, 401 F.2d 47, 49 (7th Cir.1968), and *Brouk v. Managed Funds, Inc.*, 286 F.2d 901, 907 (8th Cir. 1961), vacated as moot, 369 U.S. 424, 82 S.Ct. 878, 8 L.Ed.2d 6 (1962). The Supreme Court used similar reasoning in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975), and *J.I. Case Company v. Borak*, 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964) (private enforcement of Rule 10b–5 may "[provide] a necessary supplement to Commission action").

■ The express lesson drawn by the Supreme Court is that the 1933 and 1934 Acts are interrelated components of the federal securities regulation scheme. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206, 96 S.Ct. 1375, 1387, 47 L.Ed.2d 668 (1976). They are to be given "a cumulative construction" which "furthers their broad remedial purposes." *Herman*, 459 U.S. at 386, 103 S.Ct. at 689. This same rationale also has been influential in deciding other questions of section 10(b) liability and interpreting its remedial purposes broadly. See, e.g., *Sargent v. Genesco, Inc.*, 492 F.2d 750, 760 (5th Cir.1974) (broad privity requirement is necessary to implement the private enforcement remedy); *James v. Gerber Products Co.*, 483 F.2d 944, 950 (6th Cir.1973) (private enforcement should be encouraged to effectuate purpose of § 10(b)). This lesson cannot be reconciled with appellants' position that a judicial forum is less appropriate for 1934 Act claims than for 1933 Act claims.

This can be demonstrated further by comparing the reasons for non-arbitrability under the 1933 Act, as discussed in *Wilko*, with the considerations relevant to the 1934 Act and section 10(b). In *Wilko*, the Supreme Court gave three main reasons for concluding that Congress intended, by the nonwaiver provisions of section 14, to void agreements to arbitrate 1933 Act claims: first, securities customers are subject to overbearing by securities dealers; second, arbitration is not the equivalent of judicial proceedings in securities cases under the 1933 Act, because judicial direction is needed to insure the effectiveness of the protective provisions of the Act; and third, because of the special jurisdictional and procedural protections of the 1933 Act, a securities customer surrenders more by agreeing to arbitrate claims under the Act than would a person who agrees to arbitrate a normal business transaction claim. *Wilko*, 346 U.S. at 431–33, 435–37, 74 S.Ct. at 184–186, 186–88.

All of these considerations favoring non-arbitrability apply with at least equal force to section 10(b) claims like the one before us. First, the bargaining position between dealers and customers is no different with respect to section 10(b) claims than with respect to any other securities claim. Dealers are as likely to "maneuver buyers into a position that might weaken their ability to recover," *Wilko*, 346 U.S. at 432, 74 S.Ct. at 185, under the 1934 Act as they are under the 1933 Act. In *Weissbuch*, 558 F.2d at 835, the Seventh Circuit examined buyers' disadvantages in purchasing securities before concluding that the customer's section 10(b) claim should not be arbitrated.

*Weissbuch* followed on the heels of the Supreme Court's decision in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) which had held that an agreement to arbitrate section 10(b) claims arising out of an international transaction should be enforced. The issue in *Weissbuch* was whether to extend *Scherk* to section 10(b) claims arising under domestic contracts. The Seventh Circuit in *We-*

*issbuch* distinguished *Scherk* by pointing out:

> [a]nother consideration at play in both the *Wilko* and *Scherk* cases was the bargaining posture of the parties. The holding in *Wilko* was directed at protecting ... 'the relatively uninformed individual investor.' Lacking bargaining power and extensive information about his investment, this type of individual is most vulnerable to securities swindles and in most need of the special protection and remedies afforded by the Securities laws. It would be admittedly incongruous to attach this kind of disparity in leverage to the situation in *Scherk* where both parties possessed formidable financial interest and where their arbitration agreement emerged from a period of prolonged and extensive negotiations.

*Weissbuch*, 558 F.2d at 835. We agree that here our concern also must be for the "relatively uninformed individual investor," *id.*, as in *Wilko* and *Weissbuch*, rather than for parties with equal bargaining power who have negotiated an arbitration agreement, as in *Scherk.*

Second, the need for "the exercise of judicial direction to fairly assure [the Act's] effectiveness," *Wilko*, 346 U.S. at 437, 74 S.Ct. at 188, is the same under the 1934 Act as it is under the 1933 Act. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 590 F.2d at 826. In concluding that claims under the securities laws should not be subject to arbitration, the Second Circuit in *Allegaert v. Perot*, 548 F.2d 432, 437 (2d Cir.1977), stressed the difference between judicial proceedings and arbitration. It stated " '[t]his type of question concerning fraud within the meaning of Rule 10b–5 is properly litigated in the courts where a complete record is kept of the proceeding and findings and conclusions are made.' " *Allegaert*, 548 F.2d at 437, quoting *Greater Continental Corp. v. Schechter*, 422 F.2d 1100, 1103 (2d Cir.1970). *Allegaert*'s language echoes the Court's concerns in *Wilko:*

> Even though the provisions of the Securities Act, advantageous to the buyer, apply their effectiveness in application is lessened in arbitration as compared to judicial proceedings. Determination of the quality of a commodity or the amount of money due under a contract is not the type of issue here involved. This case requires subjective findings on the purpose and knowledge of an alleged violator of the Act. They must not only be determined but applied by the arbitrators without judicial instruction on the law. As their award may be made without explanation of their reasons and without a complete record of their proceedings, the arbitrators' conception of the legal meaning of such statutory requirements as "burden of proof," "reasonable care" or "material fact," ... cannot be examined. [Furthermore, p]ower to vacate an award is limited.

*Wilko*, 346 U.S. at 435–436, 74 S.Ct. at 186–187 (footnotes omitted). For other cases comparing the relative merits of judicial proceedings and arbitration, see *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419–421 (9th Cir.1984) (declaratory relief action concerning the interpretation of the Commodities Exchange Act is not arbitrable); *Amaro v. Continental Can Co.*, 724 F.2d 747, 750 n. 3 (9th Cir. 1984) (arbitration award on grievance under a collective bargaining agreement was not res judicata of Employee Retirement Income Security Act claim); *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743, 751 n.12 (8th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986) (action to confirm an arbitration award).

The third *Wilko* factor, the 1933 Act's protections to ensure a judicial forum, are also present in the 1934 Act for section 10(b) claims. The requirements for diversity jurisdiction need not be met to bring a claim under section 10(b), and even in cases in which diversity jurisdiction can be established, a section 10(b) plaintiff has greater service-of-process and venue resources than does a diversity plaintiff. There is no amount in controversy requirement. Section 27, the jurisdictional section of the 1934 Act, provides for nationwide service

of process, as does section 22 of the 1933 Act. *See* 15 U.S.C. § 78aa (section 27 of the 1934 Act); 15 U.S.C. § 77v (section 22 of the 1933 Act).

In fact, the 1934 Act provides even greater venue choices than does the 1933 Act. *Compare* 15 U.S.C. § 78aa (section 27 of the 1934 Act) (any district where the defendant is found, inhabits or transacts business, or "where any act or transaction constituting the violation occurred") *with* 15 U.S.C. § 77v (section 22 of the 1933 Act) (any district where the defendant is found, inhabits or transacts business, "or in the district where the offer of sale took place"). Both venue provisions are broader than those applicable to diversity suits. *See* 28 U.S.C. § 1391. Finally, while the 1933 Act grants concurrent jurisdiction to federal and state courts, the 1934 Act vests exclusive jurisdiction in the federal courts. This distinction is an even more forceful indication of Congress' intent that federal courts oversee the interpretation and application of the 1934 Act. We therefore conclude that the factors that led the *Wilko* Court to conclude that Congress intended to preclude enforcement of arbitration agreements under the 1933 Act can be no less applicable to claims under the 1934 Act.

█ Our holding, that Congress intended to preclude enforcement of agreements to arbitrate claims arising under section 10(b) of the Securities Exchange Act of 1934, comports with the legislative history and purposes of the 1934 Act, as well as with the Supreme Court's analysis of similar claims under the 1933 Act. We therefore affirm the district court's order denying Dean Witter's motion to compel arbitration of Harry Conover's section 10(b) claims.

Affirmed.