John William DAVIS,
Plaintiff-Appellant,

v.

BIRR, WILSON & CO., INC., a
California Corporation, et al.,
Defendants-Appellees.

No. 87–1768.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1988.

Decided Feb. 24, 1988.

William N. Woodson, III, Palo Alto, Cal., for plaintiff-appellant.

Robert J. Stumpf, San Francisco, Cal., for defendants-appellees.

Before ALDISERT,[*] SKOPIL and SCHROEDER, Circuit Judges.

PER CURIAM:

Davis appeals from the district court's grant of summary judgment in favor of Birr, Wilson & Company. The single issue on appeal is whether Davis' section 10(b) action is barred by the statute of limitations. We affirm.

These claimed violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), are subject to California's three-year statute of limitations for fraud,

---

[*] Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

Cal.Civ.Proc.Code § 338(4). *Robuck v. Dean Witter & Co., Inc.,* 649 F.2d 641, 643 (9th Cir.1980). The statute of limitations begins to run when the plaintiff has actual knowledge of the fraud or knowledge of facts sufficient to put a reasonable person on notice. *Id.* at 644.

In April 1981, Davis transferred his investment account from Merrill Lynch to Birr, Wilson in order to retain his current sales representative, who was transferring to Birr, Wilson. In the same year, the challenged investments occurred. During that year, Davis received confirmation slips, accountings, and monthly reports. Further, Davis was aware that these investments resulted in losses. However, Davis claims that he did not suspect fraud until 1985, when he received legal advice that his Birr, Wilson account had been improperly handled. He did not file suit until March 1986. The district court found that:

> each of the challenged transactions occurred in 1981, and the defendants supplied the plaintiff with monthly statements, confirmation slips and a Current Portfolio Statement for 1981. Each one of those reports accurately reflected the performance of the plaintiff's managed account.... The plaintiff filed this lawsuit on March 5, 1986. He knew or should have known of the alleged fraud during or before February 1983. The plaintiff fails to demonstrate facts sufficient to lead this Court to conclude that the statute of limitations should be tolled in this matter.

We have observed that parties seeking summary disposition have a difficult burden in showing there are no material issues of fact regarding notice. *S.E.C. v. Seaboard Corp.,* 677 F.2d 1289, 1294 (9th Cir. 1982). "However, reasonable diligence is tested by an objective standard, [citation omitted] and when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct, the issue may be resolved by summary judgment." *Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766, 770 (9th Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).

In this case Davis was well-educated and had recently invested large sums of money with other brokers. He received monthly statements of his account, followed his investments, and made suggestions concerning them. In connection with one of his investments, Davis acknowledged that he was "an experienced and sophisticated investor." This is not a case like *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 803 F.2d 454 (9th Cir.1986), in which we held there were questions of fact concerning the tolling of a statute for a naive investor who claimed that she was lulled into inaction by the defendant.

The summary judgment entered below is affirmed.

ALDISERT, Circuit Judge, concurring:

Although I join in the per curiam opinion of the court, I write separately to suggest that the Supreme Court has now sent signals that a uniform limitations period should be established nationwide for cases brought under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and its nubile offspring, Rule 10b-5, 17 C.F.R. § 240.10b-5 (1987). I think that it is both timely and appropriate for this court to adopt a clear-cut limitations period because of the rapidly accelerating growth of securities transactions in the states and territories that fall within this court's extensive jurisdiction.

I.

I recognize that the Supreme Court has yet to rule on the applicable limitations period for a section 10(b) and Rule 10b-5 action. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976). The absence of a uniform limitations period in such actions has been described by Judge Easterbrook as "one tottering parapet of a ramshackle edifice. Deciding what features of state periods of limitation to adopt for which federal statutes wastes untold hours." *Norris v. Wirtz,* 818 F.2d 1329, 1332 (7th Cir.), *cert. denied,* — U.S. —,

108 S.Ct. 329, 98 L.Ed.2d 356 (1987). Judge Easterbrook has lamented:

> Never has the process been more enervating than in securities law. There are many potentially analogous state statutes, with variations for different kinds of securities offenses and different circumstances that might toll the period of limitations. Both the bar and scholars have found the subject vexing and have pleaded, with a unanimity rare in the law, for help. E.g., Louis Loss, *Fundamentals of Securities Regulation* 1164–75 (1983); Thomas Lee Hazen, *The Law of Securities Regulation* § 13.8 & n. 2 (1985) (collecting authority); *Report of the Task Force on Statute of Limitations for Implied Actions*, 41 Bus.Law. 645 (1986). As the ABA's Committee on Federal Regulation of Securities observed, *id.* at 646–47, 656–57, the courts of appeals disagree on every possible question about limitations periods in securities cases. Only Congress or the Supreme Court can bring uniformity and predictability to this field[.]

*Id.* Yet we first must review the reasoning and holdings of our cases setting forth the present limitations period in section 10(b) cases.

In the seminal case of *Fratt v. Robinson*, 203 F.2d 627, 635 (9th Cir.1953), the court declared, strangely enough, that actions based on section 10(b) "do not arise out of nor upon a statute," but instead are based upon state tort fraud precepts. Accordingly, the court determined that Washington's three-year statute of limitations for fraud applies to section 10(b) actions brought in that state. In *Royal Air Properties, Inc. v. Smith*, 312 F.2d 210, 214 (9th Cir.1962), we recognized that "[i]n an action brought under section 10(b) of the Securities Exchange Act of 1934 there is no federal statute of limitations," and, without offering any additional reasoning, simply said that in *Fratt* "we applied the applicable state statute of limitations" to such actions. In *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202, 1210 (9th Cir.1970), we simply noted that in a section 10(b) case brought in California, the state's limitations period for fraud applied, citing only

*Royal Air Properties* and *Fratt.* Speaking for the court in *Robuck v. Dean Witter & Co.*, 649 F.2d 641 (9th Cir.1980), Judge Goodwin noted that in a section 10(b) case, it was possible that two limitations periods could be applied to a single complaint brought in California: three years for a count sounding in fraud; two years for one charging lack of "due diligence." Judge Goodwin summarized ruling case law:

> Our rule for federal causes of action with no federal limitations period is to look to the state statute of limitations applicable to the most similar state-law cause of action. *E.g., Briley v. California*, 564 F.2d 849, 854 (9th Cir.1977). An action for damages charging a violation of the anti-fraud provisions of the federal securities laws most resembles an action for fraud, for in order to trigger liability, both must include a showing of intentional or reckless conduct. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Hence, plaintiff's causes of action for violations of federal law, and for violations of any NYSE and NASD rules proscribing fraud must be governed by the three-year fraud statute, section 338(4). *See, United California Bank v. Salik*, 481 F.2d 1012, 1015 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); *Sackett v. Beaman*, 399 F.2d 884, 890–91 (9th Cir.1968); *Turner v. Lundquist*, [377 F.2d 44 (9th Cir.1967) ]. To the extent that some of the exchange rules require "due diligence" on the part of a broker, rather than merely refraining from fraudulent acts, any cause of action arising under them would be barred by the two-year state statute of limitations for negligence, Cal.Civ.Proc.Code § 339 (West). *See Rochelle v. Marine Midland Grace Trust Co.*, [535 F.2d 523 (9th Cir.1976) ].

*Id.* at 644; *see also Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1411–12 (9th Cir. 1987); *Semegen v. Weidner*, 780 F.2d 727, 733 (9th Cir.1985).

The law in this court, borrowing state limitations periods for section 10(b) cases, was in tune with that of all courts of ap-

peals, *see, e.g., Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605 (3d Cir. 1980), because all of us were marching to the drum beat then set by the Supreme Court—where the federal statute is silent, borrow from that state limitations period that most resembles the federal cause of action. But the Court has now changed the beat. We are now marching to a different drummer since the recent trilogy of *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* — U.S. —, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

## II.

In *Agency Holding Corp. v. Malley-Duff Assocs., Inc.,* — U.S. —, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Court provided us with a formula to approach the problem we face today. In *Malley-Duff,* the Court stated that "[a]lthough it has been suggested that federal courts always should apply the state statute of limitations most analogous to each individual case whenever a federal statute is silent on the proper limitations period, see *Wilson v. Garcia,* [471 U.S.] at 280 [,105 S.Ct. at 1949–50] (dissent); *DelCostello v. Teamsters,* 462 U.S. 151, 174, 103 S.Ct. 2281, 2295–96, 76 L.Ed. 2d 476 (1983) (O'Connor, J., dissenting), *a clear majority of the Court [in DelCostello ] rejected such a single path.*" — U.S. at —, 107 S.Ct. at 2762 (emphasis added). The Court then outlined the procedure to be followed in determining the appropriate statute of limitations for a federal claim. The first step involves characterizing the federal claim; this is generally a question of federal law. *Id.; see Wilson v. Garcia,* 471 U.S. 261, 269–70, 105 S.Ct. 1938, 1939, 1943–44, 85 L.Ed.2d 254 (1985). In this initial step, we must determine whether all claims arising out of the federal statute should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case. *Malley-Duff,* —

U.S. at —, 107 S.Ct. at 2762; *see Wilson,* 471 U.S. at 268, 105 S.Ct. at 1943.

Once this characterization is made, the next inquiry is whether a federal or state statute of limitations should be used. The Supreme Court has held that the Rules of Decision Act, 28 U.S.C. § 1652, requires application of state statutes of limitations to federal statutory actions not covered by an express limitations period unless "a timeliness rule drawn from elsewhere in federal law should be applied." *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 159 n. 13, 103 S.Ct. 2281, 2288 n. 13, 76 L.Ed.2d 476 (1983). In some circumstances, the characterization of a federal claim has led the Court to conclude that "state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law." *DelCostello,* 462 U.S. at 161, 103 S.Ct. at 2289. In *DelCostello,* the Court determined that when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, "we have not hesitated to turn away from state law." *Id.* at 171–72, 103 S.Ct. at 2294; *see also Malley-Duff,* — U.S. at —, 107 S.Ct. at 2767–68 (four-year statute of limitations governing Clayton Act civil enforcement suits applies to RICO civil enforcement actions); *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (adopting federal statute of limitations for EEOC enforcement actions); *McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958) (federal limitations period applied to unseaworthiness action under general admiralty law); *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (refusing to apply state limitations period to action to enforce federally created equitable right).

Because the Court has condemned a practice of dealing with section 10(b) and

Rule 10b–5 that involves "a shifting and highly fact-oriented disposition," *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 755, 95 S.Ct. 1917, 1934, 44 L.Ed.2d 539 (1975), I think it is sending an impressive message that we should adopt a uniform limitations period in these cases rather than try to color match each case with shifting state fraud statutes of limitations. *See Friedlander v. Troutman, Sanders, Lockerman,* 788 F.2d 1500, 1505 (11th Cir.1986) (adopting a uniform limitations period for all section 10(b) and Rule 10b–5 claims).

### III.

This court's practice of borrowing state fraud limitations periods in section 10(b) suits demonstrates the attractiveness of a uniform statute of limitations. The states and territories that fall within the jurisdiction of the Court of Appeals for the Ninth Circuit have adopted a wide diversity of limitations periods for common law fraud. Alaska, Oregon, and Montana have set a two-year limitations period for fraud. *See* Alaska Stat. § 09.10.070 (1983); Or.Rev. Stat. § 12.110(1) (1984); Mont.Code Ann. § 27–2–203 (1987). Arizona, California, Idaho, Nevada, Washington, and Guam have established a three-year statute. *See* Ariz.Rev.Stat.Ann. § 12–543(3) (1982); Cal. Civ.Proc.Code § 338.4 (1988); Idaho Code § 5–218 (1979); Nev.Rev.Stat. § 11.190.3(d) (1985); Wash.Rev.Code § 4.16.080(4) (1962); Guam Civ.Proc.Code § 338.4 (1970). Finally, Hawaii and the Marianas have adopted a six-year limitations period. *See* Hawaii Rev.Stat. § 501–217 (1985); No. Mariana Comm.Code § 12505 (1984).

In looking for the one most appropriate statute of limitations for section 10(b) and Rule 10b–5 claims, we must not make the error of equating private rights of action under section 10(b) and Rule 10b–5 with available common law fraud actions. The Supreme Court instructs that section 10(b) and Rule 10b–5 actions and common law fraud suits are two distinct breeds. Thus, the Court has refused to impose in the section 10(b) schema the traditional common law requirement in state fraud pro-

ceedings that plaintiffs establish their case by clear and convincing evidence. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390, 103 S.Ct. 683, 691–92, 74 L.Ed.2d 548 (1983). "Reference to common-law practices can be misleading, ... since the historical considerations underlying the imposition of a higher standard of proof have questionable pertinence here." *Id.* at 388, 103 S.Ct. at 690; *see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 744–45, 95 S.Ct. 1917, 1929–30, 44 L.Ed.2d 539 (1975) ("[T]he typical fact situation in which the classic tort of misrepresentation and deceit evolved was light years away from the world of commercial transactions to which Rule 10b–5 is applicable."). Moreover, the antifraud provisions of the securities laws are not coextensive with common law doctrines of fraud. "Indeed, an important purpose of the federal securities statutes was to rectify perceived deficiencies in the available common-law protections by establishing higher standards of conduct in the securities industry." *Huddleston,* 459 U.S. at 389, 103 S.Ct. at 691; *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 203, 96 S.Ct. 1375, 1385–86, 47 L.Ed.2d 668 (1976); *McClure v. Borne Chemical Co.,* 292 F.2d 824, 834 (3d Cir.), *cert. denied,* 368 U.S. 939, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961).

In *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963), the Court indicated that common law doctrines of fraud that developed around transactions involving tangible items of wealth are ill-suited to the sale of intangibles such as securities. *See also* 3 L. Loss, *Securities Regulation* 1435 (2d ed. 1961). In *Blue Chip Stamps,* the Court decided the question of whether there should be an exception to the rule that only purchasers or sellers of securities may bring an action under Rule 10b–5. The Court traced the evolution of the common law tort of misrepresentation and deceit, "to which a claim under Rule 10b–5 certainly has some relationship," 421 U.S. at 744, 95 S.Ct. at 1929, *see Peil v. Speiser,* 806 F.2d 1154, 1160 (3d Cir.1986), but explained the differences between that tort and relief under 10b–5. The Court noted that although one is required to be a pur-

chaser or seller of securities in order to recover under section 10(b) or Rule 10b–5, "it has long been established in the ordinary case of deceit that a misrepresentation which leads to a refusal to purchase or to sell is actionable in just the same way as a misrepresentation which leads to the consummation of a purchase or sale." 421 U.S. at 744, 95 S.Ct. at 1929. It is therefore clear that, far from being a mirror image or a reasonable facsimile of common law fraud, actions brought under section 10(b) and Rule 10b–5 appear to be *sui generis.*

### IV.

I suggest that the federal schema of limitations expressly set forth in the Securities Exchange Act of 1934 "clearly provides a closer analogy than available state statutes," *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294, and that "the federal policies at stake [in section 10(b) and Rule 10b–5 actions] and the practicalities of litigation make [the federal] rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* I now turn to those sections of federal securities law that are companion provisions to section 10(b).

Congress provided for statutes of repose in numerous provisions of the Securities Acts. The Securities Act of 1933 extended to the purchaser two years from the date of discovery of the fraud, but in no event more than 10 years after the sale. 48 Stat. 84 (1933). When Congress enacted the Securities Exchange Act of 1934, it amended the 1933 limitations statute (§ 13, 15 U.S.C. § 77m) and specified a new statute of limitations for each of the express rights of action it created. *See* § 9(e), 15 U.S.C. § 78i(e) (manipulation of security prices); § 16(b), 15 U.S.C. § 78p(b) (profits from purchase and sale of securities within six months); § 18(c), 15 U.S.C. § 78r(c) (liability for misleading statements in any application, report, or filed document). In 1938, Congress added a statute of limitations for section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b) (validity of contract provisions in violation of Act or regulations thereunder).

The express periods of limitations added or amended in 1934 and 1938 allow the plaintiff to file an action no later than one year after the plaintiff discovers the facts, and in no event more than three years after the transaction in question. One exception, the unlawful profit statute, section 16(b), 15 U.S.C. § 78p(b), sets two rather than three years as the period of repose. There are reasons for these specific periods of repose in the 1934 Act. In *Norris v. Wirtz,* 818 F.2d 1329, 1332 (7th Cir.), *cert. denied,* ___ U.S. ___, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987), the court noted:

> The legislative history in 1934 makes it pellucid that Congress included statutes of repose because of fear that lingering liabilities would disrupt normal business and facilitate false claims. It was understood that the three-year rule was to be absolute.

*See Report of the Task Force on Statute of Limitations for Implied Actions,* 41 Bus.Law. 645, 655 (1986); 6 J.S. Ellenberger & E. Mahar, *Legislative History of the Securities Act of 1933 and Securities Exchange Act of 1934* 6565–66, 6718, 6993 (1973), and 7 *id.* at 7743–44.

Congress cannot be faulted for not providing a statute of limitations, because it did not enact the section 10(b) private cause of action; it is a genie sired solely by the judiciary, and the genie having escaped from the bottle is not easily cabined. So the courts resort to the political science fiction of formulating judicially-declared "statutes" of limitations, suggesting that this would have been the intention of Congress had it created an express cause of action. It is a sort of hermaphroditic process: the courts invent the remedy and then seek to determine what would have been the intention of Congress as to a statute of limitations had it expressly created the private damage action. Because Congress takes no action to legislate to the contrary after an implied cause of action has been judicially formulated, we conclude that by *post hoc* inaction, Congress must have intended *ante hoc* that this is what it desired.

I think we find guidance from the discussion in the latest offering of the Supreme Court in June 1987. In *Malley-Duff,* the

Court emphasized that for RICO actions "as with § 1983, a uniform statute of limitations is required to avoid intolerable 'uncertainty and time-consuming litigation.'" ___ U.S. at ___, 107 S.Ct. at 2764 (quoting *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945). But when it came to deciding whether to borrow a uniform limitations period from the body of state or federal law, the Court resorted to the process of analogy and found RICO much more comparable to the Clayton Act than to any state statute. If we apply the *Malley-Duff* test of "far closer analogy," we find that section 10(b) of the Securities and Exchange Act of 1934 bears "a far closer analogy to [companion provisions in the 1934 Act] than any state alternative." *Id.; see DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294–95.

Both section 10(b) and its companion provisions—§ 9(e) (manipulation of security prices); § 16(b) (profits from purchase and sale of securities within six months); § 18(c) (liability for misleading statements in any application, report, or filed document); and § 29(b) (validity of contract provisions in violation of Act or regulations thereunder)—are aimed at the same objectives. All of these companion provisions, except section 16(b), have a uniform federal limitations period. All reflect, in common with section 10(b), the purpose of the original Securities Act of 1933:

> to "provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes."

*Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 728, 95 S.Ct. 1917, 1921–22, 44 L.Ed.2d 539 (1975) (quoting 1933 Act). All aim to compensate the same type of injury. All are designed to fill a void in the common law and to create remedies that would be uniform throughout our nation's commercial universe, instead of being subjected to the vagaries of independent and diverse state statutory regulations.

Authorized by the interstate commerce clause and responding to the need for national uniformity (an absolute component of our national economy), the remedies under the Securities Acts are made uniform by federal law in all 50 states. What Justice Story stated with great eloquence, in another era in another context, seems especially appropriate here:

> the law respecting [securities] may be truly declared in the language of Cicero, adopted by Lord Mansfield in *Luke v. Lyde,* 2 Burr, 883, 887, to be in a great measure, not the law of a single country only, but of the commercial world. *Non erit alia lex Romae, alia Athenis; alia nunc, alia posthac; sed et apud omnes gentes, et omni tempore una eademque lex obtinebit.*

*Swift v. Tyson,* 16 Pet. 1, 10 L.Ed. 865, 871 (U.S.1842).

The necessity for uniform federal remedies in security cases would seem to demand recourse to a uniform federal statute of limitations. A broker in Phoenix, an issuer in San Francisco, a purchaser in Montana, an accountant in Portland, and a lawyer in Honolulu should be subject to the same statute of limitations for actions based on section 10(b) or Rule 10b–5. Again with a nod to Cicero, you simply should not have a different Securities Act limitations period for Rome, New York, and Athens, Georgia (*Non erit alia lex Romae, alia Athenis*). And since uniformity is not found in the diverse body of state tort limitations periods, we are impelled inexorably to look to federal limitations for borrowing purposes.

It is difficult to consider a limitations statute that better reflects the "federal policies at stake" and the "practicalities of litigation" in a case based on the Securities Exchange Act of 1934 than those provisions of the Act that explicitly and expressly state such a period. Indeed, because the Supreme Court opened the door to borrowing relevant federal limitations statutes, and in light of the congressional philosophy and purposes set forth in the 1933 and 1934 Acts that have been so consistently emphasized and implemented by the federal courts, it would seem bizarre if not anomalous to go beyond the express statutes of limitations contained in provisions of the 1934 Act.

## V.

I now recount the route I have travelled. I have concluded that because of *DelCostello, Wilson,* and *Malley-Duff,* we are free to re-examine the reasoning and holdings of present case law in this court, for the Supreme Court has rejected the claim-by-claim analysis that underlies those cases:

> Although it has been suggested that federal courts always should apply the state statute of limitations most analogous to each individual case whenever a federal statute is silent on the proper limitations period ... a clear majority of the Court rejected such a single path.

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* —— U.S. ——, 107 S.Ct. 2762 (1987).

I have also shown that section 10(b) actions cover the national scene in terms of multiple variations of conduct—the broker in Arizona, the issuer in the California Bay Area, the purchaser in Big Sky country, the accountant and the lawyer elsewhere—and I believe that, as in section 1983 and RICO cases, any analogies to traditional state causes of action "are bound to be imperfect." *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945.

Finally, notwithstanding any earlier concerns, felt or recorded, that we could not "borrow" federal statutes because the Supreme Court had rarely deviated from the normal rule of looking to state rather than federal statutes, *DelCostello* and *Malley-Duff* have changed all that. This is just that kind of case where "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes," *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294, and the rule of repose found in companion sections of the 1934 Act furnishes the best analogy. *See Malley-Duff,* —— U.S. at ——, 107 S.Ct. at 2762–63.

I therefore suggest that the express limitations sections of the Securities Exchange Act of 1934 provide the preferable source of limitations borrowing here. As Professor Loss puts it:

> This reference to state law makes for a great amount of utterly wasteful litigation. . . . Would it not be eminently more consistent with the overall statutory scheme to look to what Congress itself did when it was thinking specifically of private actions in securities cases rather than to a grab-bag of more or less analogous state statutes?

L. Loss, *Fundamentals of Securities Regulation* 1168–69 (1983). When Congress has created a right to sue in securities matters, it has, with one exception, declared a limitations period no longer than three years. *See* 15 U.S.C. § 77m; 15 U.S.C. § 78i(e); 15 U.S.C. § 78r(c); 15 U.S.C. § 78cc(b). I think that the proper period of limitations for a section 10(b) and Rule 10b–5 action should be one year after the plaintiff discovers the facts, and in no event more than three years after the transaction in question.