**David L. NUDO, Plaintiff,**

v.

**Stephen G. McNEIL, and Black & Company, Inc., an Oregon corporation, Defendants.**

**Civ. No. 87–1428–MA.**

United States District Court, D. Oregon.

Dec. 8, 1988.

Robert S. Banks, Jr., Banks & Newcomb, Portland, Or., for plaintiff.

Norman J. Wiener, Thomas C. Sand, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendants.

## OPINION

MARSH, District Judge.

This is a securities action brought by an investor against Black & Company, Inc. and one of its stockbrokers. Plaintiff contends that defendants gave improper investment advice amounting to federal securities fraud. Plaintiff also sets forth several state pendent claims.

Defendants move for summary judgment on the basis that the action is barred by the applicable statute of limitations. For the reasons set forth below, defendants' motion is denied.

## FACTS

Plaintiff first began investing with defendant Black & Co. in August of 1980 by opening a joint account with his wife. In 1983, plaintiff opened an account for his son and an Individual Retirement Trust Account (IRA). Between June and November, 1983, plaintiff purchased seven stocks, selected on the advice of defendant McNeil, for his IRA. Plaintiff contends that he directed defendant McNeil to select only "minimum risk" stocks suitable for a conservative investment portfolio.

During the following two years, plaintiff received monthly statements indicating the market price of each stock and the overall value of his IRA. The value of his IRA declined substantially and on October 8, 1985, plaintiff sold all of the stocks in his IRA. Following the sales, plaintiff received financial statements showing his net loss. In February of 1986, a friend suggested to plaintiff that his stockbroker might have made inappropriate stock selections.

In June of 1986, plaintiff filed an action in state court against defendants, alleging securities fraud. Plaintiff later voluntarily

dismissed the action. On December 23, 1987, plaintiff brought this action in federal court.

## STANDARDS

Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Securities and Exchange Comm. v. Murphy,* 626 F.2d 633, 640 (9th Cir.1980). He may meet this burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 106 S.Ct. at 2554.

For purposes of commencing the limitations period, "summary judgment is appropriate only where no reasonable jury could differ as to whether the plaintiffs exercised due diligence in discovering the fraud." *Durham v. Business Management Assoc.,* 847 F.2d 1505, 1509–10 (11th Cir.1988). The Ninth Circuit has recognized that summary judgment is often inappropriate in cases where the issue is the discovery of fraud:

> "[P]arties seeking summary disposition have a difficult burden in showing there are no material issues of fact regarding notice.... 'However, reasonable diligence is tested by an objective standard, ... and when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct, the issue may be resolved by summary judgment.'"

*Davis v. Birr, Wilson & Co., Inc.,* 839 F.2d 1369, 1370 (9 Cir.1988) (citations omitted).

## DISCUSSION

### 1. Law of the Case Doctrine

On January 22, 1988, defendants moved to dismiss this action on the basis that it was barred by the statute of limitations. This motion was treated as a motion for summary judgment and denied by Magistrate Juba. No objections to the Findings and Recommendation were filed, which relieved me of my obligation to give the record a *de novo* review. *Lorin Corp. v. Goto & Co. Ltd.,* 700 F.2d 1202, 1206 (8th Cir.1983); *see also Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983). On March 17, 1988, I adopted Magistrate Juba's findings.

Defendants' current motion for summary judgment raises the same statute of limitations issue. The record, however, has been supplemented with plaintiff's deposition testimony. In addition, I have given the record of this case a *de novo* review.

Plaintiff contends that because defendants' previous motion was denied, the law of the case doctrine bars this Court from re-examining the statute of limitations issue. I disagree.

■ As noted above, defendants' initial summary judgment motion actually arose out of the filing of a motion to dismiss. Magistrate Juba correctly chose to treat the motion to dismiss as one for summary judgment on the basis of the submission of materials outside of the pleadings. Thereafter, discovery was completed which presumably should have occurred prior to a motion for summary judgment. This discovery included the deposition of plaintiff. Defendants now affirmatively seek summary judgment.

Under the foregoing circumstances, I conclude that it is appropriate to consider defendants' motion. While normally I would not consider successive motions for summary judgment, the law of the case doctrine does not prohibit me from doing so. *See Hanna Boys Center v. Miller,* 853 F.2d 682, 686 (9th Cir.1988) (law of case doctrine is not inexorable command); *United States v. Mills,* 810 F.2d 907, 909 (9th Cir.) *cert. denied,* — U.S. ——, 108 S.Ct. 107, 98 L.Ed.2d 67 (1987) (law of the case doctrine is discretionary not mandatory); *United States v. Houser,* 804 F.2d 565, 567

(9th Cir.1986) (all trial court rulings subject to revision at any time before entry of judgment); 18 C. Wright, Miller & Cooper, Federal Practice and Procedure § 4478 (1981).

### 2. Statute of Limitations

■ The parties agree, and current case law provides, that the forum state's limitations period applies to federal security claims. *Semegen v. Weidner*, 780 F.2d 727, 733 (9th Cir.1985), *but see Davis v. Birr, Wilson & Co.*, 839 F.2d 1369, 1370 (9th Cir.1988) (Judge Aldisert, concurring). In Oregon, the federal court applies the two-year statute of limitations for common law fraud (ORS 12.110(a)).

■ While state law provides the governing limitations period, federal law determines when the period commences. *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1309 (9th Cir.1982). Under the federal rule, the limitations period begins when the plaintiff "discovered or could have discovered the fraud with the exercise of reasonable diligence." *Id.* Stated differently, the period commences "when the plaintiff had actual knowledge of the fraud or knowledge sufficient to put a reasonable person on notice." *Davis*, 839 F.2d at 1370.

■ Plaintiff claims that he first learned that his stock selections might have been inappropriate when talking to an acquaintance in February of 1987. Plaintiff argues that he reasonably could not have known of the fraud earlier, and that this conversation should trigger the limitations period.

No special significance attaches to a casual conversation with an acquaintance so that it, rather than another event, should be the decisive point at which plaintiff is put on notice of the alleged fraud. To hold otherwise would be to conclude that the statute of limitations would be tolled indefinitely until plaintiff fortuitously receives advice from a friend.

Nevertheless, I conclude that there is a genuine issue of fact as to when plaintiff knew or reasonably should have known of the alleged fraud. I base this conclusion on several factors. First, I do not agree that the decline of one or more of plaintiff's stocks *necessarily* puts even a moderately sophisticated investor on notice of fraud. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 878 (9th Cir.1984) (decline in stock price may be explained by financial mismanagement, cost overruns, general market conditions, or other events unrelated to accounting fraud).

Similarly, the sudden and voluntary liquidation of plaintiff's IRA and the post-sale accounting statements advising plaintiff of his net-loss similarly do not establish, as a matter of law, that a reasonably prudent investor would have been on notice of fraud. Moreover, plaintiff's complaint filed in state court does not dictate a contrary conclusion.

Defendants point to plaintiff's state court complaint as an admission that plaintiff knew of the alleged fraud when he liquidated his account. The complaint alleged that it was not until his account was liquidated "that plaintiff learned none of [the stock was] appropriate for an IRT account or for his investment objectives."

Contrary to defendants' assertions, I do not find that this judicial statement establishes notice as a matter of law in light of plaintiff's deposition testimony which provides:

Q: Mr. Nudo, isn't it true that you knew when those stocks were liquidated at your instructions, that they had not been appropriate for you, in your view?

A: No. I know they had lost money.

From the portion of the deposition submitted, it also appears that plaintiff testified that his knowledge of the alleged fraud was not gained contemporaneously with the liquidation.

Based on the foregoing, I conclude that there is a genuine issue of material fact as to when plaintiff knew or should have known of the alleged fraud. While the evidence of notice will be carefully considered at the time of trial, I conclude that summary judgment is inappropriate.

Accordingly, defendants' motion for summary judgment #25 is denied.